CROSBY et al. v. STEVENS et al. (No. 533.)*

(Court of Civil Appeals of Texas. El Paso. Feb. 24, 1916. Rehearing Denied March 23, 1916.)

1. TRESPASS TO TRY TITLE ⊚⟹44—QUESTIONS FOR JURY.

Where plaintiffs' title depended on whether a certain early grant included the land claimed, and the boundary of the grant was the north bank of a river, it was not error to submit to the jury the special issue whether, at the time of the grant, the land claimed by plaintiffs was on that side of the river, either in whole or in part.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 66; Dec. Dig. ⊚⟹44.]

2. TRESPASS TO TRY TITLE ⊚⟹44—PROVINCE OF JURY—SUFFICIENCY OF EVIDENCE.

In trespass to try title, the burden being upon the plaintiffs, if their evidence was insufficient, clearly to establish title, the jury might disregard it altogether, and therefore submission of the sufficiency of their evidence was proper, whether defendants introduced any evidence or not.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 66; Dec. Dig. ⊚⟹44.]

3. BOUNDARIES ⊚⟹36(3) — EVIDENCE — MAPS AND PLATS.

Recently made maps and plats of lands are of no value in determining a boundary existing 60 years before; such boundary being the bank of a river shown to have shifted since the grant.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 166, 167; Dec. Dig. ⊚⟹36(3).]

4. TRESPASS TO TRY TITLE ⊚⟹41(1) — EVIDENCE—SUFFICIENCY.

Evidence held to support the finding of the jury that plaintiffs, in trespass to try title, had no title to the land in question, since it was not included within the grant under which they claimed.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 62; Dec. Dig. ⊚⟹41(1).]

5. APPEAL AND ERROR ⊚⟹1002—APPEAL—REVIEW OF QUESTIONS OF FACT.

It is not the province of the court on appeal to resolve a conflict in the evidence as to a question of fact.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3935-3937; Dec. Dig. ⊚⟹1002.]

6. TRESPASS TO TRY TITLE ⊚⟹40(4) — LOCATION OF BOUNDARY—EVIDENCE.

The fact that a deed by a town to which land had been granted included only to a certain line is not conclusive that the deed to the town was of the same extent, although it may be evidence to that effect.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 57, 61; Dec. Dig. ⊚⟹40(4).]

7. TRIAL ⊚⟹194(10)—INSTRUCTIONS—WEIGHT OF EVIDENCE.

Instruction, in trespass to try title on issue of mistake in old plat, held not on the weight of evidence, but proper submission of the issues.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 457; Dec. Dig. ⊚⟹194(10).]

8. TRESPASS TO TRY TITLE ⊚⟹45(1)—INSTRUCTIONS—SUBMISSION OF ISSUES.

Refusal of instruction on sufficiency of evidence as to line of old grant held not erroneous, where giving it would have nullified the issues submitted, and would have been contrary to the evidence in the cause.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 67; Dec. Dig. ⊚⟹45(1).]

9. TRESPASS TO TRY TITLE ⊚⟹45(1)—INSTRUCTIONS.

An instruction, trespass to try title to land alleged to be part of an old grant, that the jury should consider only the boundary as it existed at the time of the grant was not erroneous, as it left the jury free to determine where the boundary was.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 67; Dec. Dig. ⊚⟹45(1).]

10. TRESPASS TO TRY TITLE ⊚⟹41(1) — EVIDENCE—SUFFICIENCY.

Evidence held to support a judgment for the defendants in trespass to try title, where there was no evidence that it was physically impossible for the land to have been located as the jury found it was.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 62; Dec. Dig. ⊚⟹41(1).]

11. TRIAL ⊚⟹193(1)—INSTRUCTIONS—OPINION OF JUDGE.

Instruction, in action to quiet title, held not improper on the ground that it indicated what the findings of the jury should be.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 436; Dec. Dig. ⊚⟹193(1).]

12. TRESPASS TO TRY TITLE ⊚⟹45(1) — INSTRUCTIONS.

Requested instructions, in trespass to try title, which would call for a general verdict, held properly refused; a general verdict in such action not being proper in view of the submission of special interrogatories.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 67; Dec. Dig. ⊚⟹45(1).]

13. TRESPASS TO TRY TITLE ⊚⟹7—TITLE BY LIMITATION—EVIDENCE.

In the absence of evidence that one who at one time held title by limitation had assigned it to the plaintiffs specifically as a part of the plaintiffs' grant, his title by limitation would avail plaintiffs nothing, where they claimed only under a specifically named grant.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 10; Dec. Dig. ⊚⟹7.]

---

⊚⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Application for writ of error pending in Supreme Court.

14. TRIAL ☞362 — FINDINGS OF COURT — WHEN ERROR.

Under Rev. St. 1911, art. 1985, providing that on appeal an issue not submitted nor requested shall be deemed as found by the court so as to support the judgment, provided there is evidence to sustain such finding, error cannot be predicated on the insertion of findings by the court in addition to those of the jury, which were necessary to the judgment, though they need not have been expressly found.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 865–868; Dec. Dig. ☞362.]

15. APPEAL AND ERROR ☞547(1)—PRESERVATION OF EXCEPTION—SUFFICIENCY.

Error cannot be predicated on the refusal of the court to submit requested issues, not made subject to proper assignment of error nor accompanied by proper bills of exception, showing timely and proper application to the court for the submission of the requested issues.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2427, 2429, 2430; Dec. Dig. ☞547(1).]

16. NEW TRIAL ☞157—MOTION—NECESSITY OF ANSWER.

Allegations of fact in a motion for a new trial, supported by affidavit, need not be answered or denied, and will not be taken as confessed, nor need the court grant the motion in the absence of denial.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 314, 317, 318; Dec. Dig. ☞157.]

17. APPEAL AND ERROR ☞933(5)—PRESUMPTIONS—DECISION OF TRIAL COURT—MOTION FOR NEW TRIAL.

Where, on appeal from a judgment overruling a motion for a new trial, the record shows no testimony taken in relation to facts not supported by affidavits accompanying the motion, it will be presumed that the court was correct in overruling the motion.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3425, 3426, 3475; Dec. Dig. ☞933(5).]

18. APPEAL AND ERROR ☞933(1)—PRESUMPTIONS—ACTS OF TRIAL JUDGE.

Although it appears that during a trial the trial judge was taken sick, but there is no admission or proof that he was too ill intelligently to pass upon a motion for new trial, it will be presumed that he was, in spite of his illness, still possessed of a fair degree of intelligence, and that he exercised it.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3772; Dec. Dig. ☞933(1).]

19. ADVERSE POSSESSION ☞57—EVIDENCE—SUFFICIENCY.

Where plaintiffs claimed title to land by adverse possession under a certain grant and the jury found that that grant did not include the lands sued for, the question of sufficiency of time to establish title by limitations was immaterial.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 277, 278, 655, 667, 687; Dec. Dig. ☞57.]

20. JURY ☞32(2)—NUMBER—AGREEMENT.

Under Rev. St. 1911, art. 5214, requiring a jury to consist of 12 men, but providing that the parties may agree to try with a less number, a jury of 11, obtained by agreement, is a legal and complete jury.

[Ed. Note.—For other cases, see Jury, Cent. Dig. § 222; Dec. Dig. ☞32(2).]

21. TRIAL ☞323—VERDICT—SIGNATURE—SUFFICIENCY.

Where a jury of 11 is agreed upon, it is not necessary that each of the 11 sign the verdict,

but the signature of the foreman alone is sufficient.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 759; Dec. Dig. ☞323.]

22. APPEAL AND ERROR ☞218(1)—PRESENTATION OF OBJECTIONS—SUFFICIENCY OF VERDICT.

Where a party failed, on rendition of a verdict by 11 jurors, to object to their failure to sign the verdict, it could not, for the first time on appeal, complain thereof, if it was error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1315–1319, 1321, 1323; Dec. Dig. ☞218(1); Trial, Cent. Dig. §§ 818, 875.]

23. TRIAL ☞323—VERDICT—SIGNATURE—SUFFICIENCY.

Where all the members of the jury in open court acknowledged that the verdict returned was their verdict, signature by all of them was unnecessary.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 759; Dec. Dig. ☞323.]

24. JURY ☞149 — INTERLOCUTORY ORDERS — POWERS OF COURT.

Where there is no judicial determination that a juror is ill, but the parties merely agree, on information that he is ill, to go to trial with 11 jurors, the court properly refused to enter a formal order, finding that the juror was ill.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 635–637; Dec. Dig. ☞149.]

25. JURY ☞149 — INTERLOCUTORY ORDERS — POWERS OF COURT.

Since a court has control over its orders during the term, though an order declaring a juror ill was filed, it could be withdrawn at any time during the term of the court.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 635–637; Dec. Dig. ☞149.]

26. MOTIONS ☞56(1) — ORDERS — POWERS OF COURT.

In the absence of evidence that the facts stated in a proposed order are true, it cannot be held that the court was in error in refusing to file it.

[Ed. Note.—For other cases, see Motions, Cent. Dig. § 67; Dec. Dig. ☞56(1).]

27. TRIAL ☞304 — CONDUCT OF JURY — IMPROPER CONDUCT—SECRET BALLOT.

It is not improper conduct for a juryman to remark to the jury that he had friends on both sides, and therefore wanted the ballot to be secret, where it did not appear that the verdict was in any way improper.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 725–727; Dec. Dig. ☞304.]

28. APPEAL AND ERROR ☞837(7) — MATTERS REVIEWABLE—SPECULATION.

Where error is assigned to the refusal of a new trial because the jury received material communications, the exact character of which was unknown to the appellants, the court on appeal could not review the order, since review would necessarily be based on speculation.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. ☞837(7).]

29. TRIAL ☞344—IMPEACHMENT OF VERDICT —EVIDENCE OF JURORS.

The verdict of the jury cannot be impeached by affidavits or evidence of the jurors that there was a mistake of fact entering into the verdict.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 813; Dec. Dig. ☞344.]

Appeal from District Court, El Paso County; Dan M. Jackson, Judge.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Action by Josephine Crosby and others against H. B. Stevens and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

See, also, 166 S. W. 62.

M. W. Stanton, D. Storms, and McBroom & Scott, all of El Paso, for appellants. T. A. Falvey, Millard Patterson, J. A. Buckler, and V. C. Moore, all of El Paso, for appellees.

HARPER, C. J. Appellants instituted this suit in the form of trespass to try title to the lands described in their trial petitions; also pleaded that they have title by the statutes of limitations of 3, 5, and 10 years. Appellees answered by pleas of not guilty, general denial, and by cross-action and plea in reconvention, interpose the statutory form of trespass to try title, and also assert title by virtue of the 5 and 10 year statutes of limitation. In other words, appellants seek to establish the boundary line between that portion, described by metes and bounds, of a tract of land known as the Ascarate grant claimed by them and that portion of a tract, also described by metes and bounds, known as the Ysleta grant, claimed by appellees, and it was agreed that the record title to the lands was in the parties asserting it, if, in fact, shown to be situated within the limits of said grants.

In order that we may definitely define the question to be determined in this suit, it is thought advisable to, in a way, detail the history of the two tracts of land. The Legislature of Texas in 1854 (Sp. Acts 5th Leg. c. 30) passed the following act:

"An act to relinquish to the inhabitants of Ysleta, in El Paso county, a certain tract of land adjoining the town tract now held and owned by said inhabitants.

"Whereas, by a change in the channel of the Rio Grande, in the year eighteen hundred and thirty-one or thirty-two, the citizens of the town of Ysleta were deprived of a large portion of the grant of land made to them by the government of Spain, and a portion of the town tract belonging to the inhabitants of Cinecue was left on the east side of the Rio Grande, therefore,

"Section 1. Be it enacted by the Legislature of the state of Texas, that the state of Texas hereby relinquishes to the inhabitants of the town of Ysleta, in the county of El Paso, all the right which is now vested in the state to the tract of land lying on the east side of the Rio Grande, above the town tract of Ysleta, which formerly belonged to the said inhabitants of Cinecue, commencing at the northwest corner of the town tract of Ysleta on the Rio Grande; thence up said river with its meanders to the point where the Rio Grande and the Rio Viejo separate; thence down the east bank of the Rio Viejo, to the southwest corner of survey number twelve, located in the name of T. H. Dugan; thence north with the east line of said survey to where it crosses the northern line of the Cinecue tract; thence east with the north line of the Cinecue tract, to the northwest corner of the Ysleta tract; thence along said line to the place of beginning, supposed to contain about two leagues.

"Sec. 2. This act shall not be construed so as to affect any vested right now held to said tract by any person whatever.

"Sec. 3. The Commissioner of the General Land Office is hereby required to issue a patent, in the name of the inhabitants of Ysleta, to the tract of land described in the first section of this act, provided there is no evidence of conflicting claims on record in the General Land Office.

"Sec. 4. This act shall take effect and be in force from and after its passage.

"Approved, January 31, 1854."

In 1858 the following act was passed (Acts 7th Leg. c. 120):

"An act to relinquish the right of the state to certain lands therein named.

"Section 1. Be it enacted by the Legislature of the state of Texas, that the state of Texas hereby relinquishes all right and interest in the following described lands, to the original grantees thereof, their heirs, and legal assigns, to wit: In the county of El Paso * * * 4. To Juan and Jacinto Ascarate, three leagues of land, called 'El Rancho de Ascarate.'

"Sec. 2. That it shall be the duty of the several claimants to the lands named in this act, to have the same surveyed by the district or county surveyor of said county, which survey shall in all respects conform to the metes and bounds designated in the original grant, and upon the return of the field notes thereof to the General Land Office, the Commissioner of the General Land Office is hereby authorized and required to have the same plotted on the proper map in his office, and issue patents for the same in accordance with existing laws.

"Sec. 3. That the confirmation herein extended to the lands named in this act, shall in no way be construed to interfere with any rights which may have accrued to other parties before the passage of this act. Provided, that nothing in this act shall be so construed as to relinquish the right of the state to any of the islands or salt lakes situated in the county named in this act.

"Sec. 4. That this act take effect and be in force from and after its passage.

"Approved, February 11, 1858."

These acts fix the boundary line between the two grants to be the east (more properly north) bank of the Rio Viejo, as it was in 1854, the date that the first, the Ysleta grant, was relinquished or confirmed. The case was tried by jury, submitted upon special issues, and resulted in a verdict and judgment for defendants, from which this appeal is perfected.

The opinion in a former appear of this case is reported in 166 S. W. 62, and to which we refer for matters of detail in the statement of the case not contained herein. We take up the assignments in the order which seems most appropriate.

Appellants' ninth assignment raises the following questions:

"(a) The judgment and verdict are erroneous, because without evidence to support them; (b) are against the weight and overwhelming preponderance of the evidence; (c) and is the result of prejudice and passion; (d) or other improper motive of the jury; (e) and in any event the result of a total disregard by the jury of the evidence introduced in the cause; (f) that the banks of the Rio Viejo were fixed by original surveys; (g) established by resurveys made by engineers acting for both plaintiffs and defendants; (h) that the northerly and easterly line or boundary of the survey of defendants, as described in the pleadings, could not have been located at the north bank of the Rio Viejo, as it was located in 1854; (i) the effect and probative force of maps, plats, field notes and elevations attached to pleadings; (j) that the line was established by unambiguous calls for certain known and established natural and artificial objects;

(k) the probative value of the testimony of non-expert witnesses, etc. Rule 29."

But after mature deliberation, we have concluded that it was intended to simply raise the question presented in the next two assignments.

[1, 2] The tenth is that the court erred in submitting special issue No. 1, because there is no evidence to warrant the court in giving it. The eleventh is that the finding of the jury in response to issue No. 2 is wholly without evidence to support it. Issues 1 and 2, as submitted by the court and the answers thereto, are as follows:

"First. Do you find from the preponderance of the evidence that all of the land described in the plaintiffs' third amended original petition filed herein on May 3, 1915, in connection with their trial amendment is northerly of the north bank of the Rio Viejo, as it was in 1854? Answer yes or no. Answer: No.

"If you have answered the foregoing question No. 1 in the negative, then, but not otherwise, the court submits for your determination this additional question:

"Second. Do you find from the preponderance of the evidence that any part of the land sued for and described in the plaintiffs' third amended original petition, filed herein on May 3, 1915, in connection with their trial amendment, lies northerly of the north bank of the Rio Viejo, as it was in 1854? Answer: No."

These issues do not require the jury to determine and fix the exact location of the east or northerly bank of the Rio Viejo, as it was in 1854, except in a negative way, that is, by the findings, they have determined that the lands sued for, being described by metes and bounds in plaintiffs' petition, are not north of the said bank; therefore it amounts to a finding that the lands described are not in the Ascarate grant, and, not being in the said grant, must of necessity be in the Ysleta grant. The plaintiff had the burden of establishing that the lands described by them were in the Ascarate grant by a preponderance of the evidence, for by so doing alone could they obtain a verdict and judgment as against the defendants, so necessarily this question had to be submitted, even though the defendants introduced no evidence, for it was within the province of the jury to discard all of plaintiff's evidence, if from it they could not determine that the lands sued for were in the Ascarate; so it follows that the court did not err in submitting the issues.

[3] This, then, brings us to the question raised by the eleventh: "Is there any evidence to support the finding?" And we answer in the affirmative. The mass of maps and plats in the record are of no value in determining the exact location of the east or northerly bank of the Rio Viejo upon the ground, except in so far as it be proven by witness who run the lines, or who were present and witnessed the work of running the lines, that the calls for course and distance, which are the basis of the maps or plats, actually on the ground, reached the bank in dispute. And since all these maps are (com-pared with 1854) of recent make, they are only of value to the extent that they may be verified by witnesses as correctly locating the bank of the Rio Viejo at the time fixed by the Legislature, 1854. Especially is this true in view of the fact that many witnesses testified (and it seems to be conceded) that there were many old river beds across the land in controversy. As we understand the contentions of the parties, the lands described by the plaintiffs lie south of the points of the foothills, and that described by the defendants between the south line fixed by plaintiffs and the points of the foothills, which (points) defendants claim compose the east or northerly bank of the Rio Viejo as it was in 1854. And these points of foothills are found to be the dividing line between the surveys by the verdict of the jury. Is there, then, any evidence to support this finding?

[4] The surveyors who made the maps and plats introduced in evidence by defendants testified that they made the surveys upon the ground in accordance with the field notes contained in defendants' cross-action; that the calls for course and distance reached the points of these foothills as shown upon the maps, and that there was a well-defined old river bed there of which the points of foothills formed the north bank. And other witnesses testified that they were present when some of these surveys were made and substantially corroborated the surveyors. Again, several witnesses testified to being 80 to 85 years of age; that they were born in Ysleta or Socorro; that they remembered the time the river changed; and that it ran against the foothills, beginning at about the northwest corner of the lands contended for by defendants.

Parker Burnham, who testified that he came to El Paso in 1859, a stage driver for the Butterfield Overland route, described in detail the point where the river first ran against the foothills, and how it ran, etc. It could serve no good purpose to quote this evidence at length, so we refrain from doing so, but from what has been quoted, it shows that there is abundant evidence in the record to support the finding by the jury.

[5] Appellants contend that the verdict is not based upon the evidence, because, by the field notes of defendants, acres of land are upon the mesa. This may be so, but witnesses have testified both ways, and we are not here authorized to determine the question.

[6] If we understand, appellants contend further that, by the Tays' survey and map of Ysleta tract, Eubank's survey, and map and deeds made to different parties by the town of Ysleta, the line has been fixed. The answer is that Eubank and Tays and the mayor and other officials of Ysleta could have made a mistake as well as any other, as to the exact location of the bank of the Rio Viejo, contended for, and if the town deed did not extend the lines in the Harris tract, for in-

stance, to the north line of the grant, it might be evidence of the location of the boundary line, but not conclusive proof, and there is no attempt by appellants to invoke the rule of estoppel.

[7] We adopt the last above observations in overruling the eighteenth assignment, which urges that the trial court erred in giving special charge No. 2, at the request of defendants, which reads:

"That though you may believe from the evidence that when Tays' deed, introduced in evidence, and the Tays' map, was made, the town of Ysleta and J. W. Tays believed that the Rio Viejo was along the line called for in the Tays' deed, if you further believe from the evidence that the Rio Viejo was in fact north of said course mentioned in the Tays deed, you are charged that such mistake should not affect you in your findings as to the location of the north bank of the Rio Viejo."

This charge was not upon the weight of the evidence, but left the jury to find from the evidence adduced upon the instant trial whether, in fact, there had been a mistake, and, if so, it could not change the location of the Rio Viejo.

[8] The twelfth is that the court erred in refusing to submit for plaintiff the following special instruction:

"In determining issues 1, 2, and 3, you would not be warranted by the evidence in this cause in finding that the north bank of the Rio Viejo as it existed on the ground in the year 1854 was located on the north line of the property in controversy and above the bank or foothills, as shown by the undisputed evidence in this cause."

It is apparent that the submission of such a charge would have nullified the issues submitted. As held above, the undisputed evidence does not show that any lands upon top of the foothills were included in the description contained in appellees' answer.

[9] The trial court did not err in giving special charge No. 3, as urged in the thirteenth, fourteenth, sixteenth, and seventeenth assignments. The charge is:

"You are charged that if you believe from the evidence that in the year 1854, and prior to that time the east bank or northeast bank of the Rio Viejo was at the north line of the tract claimed by defendants in this cause, any change that may have occurred in the line of the north bank of the Rio Viejo after that time, or after the time of its separation from the Rio Viejo, would be entirely immaterial."

Because it simply directed the minds of the jury to the issue in the case—the location of the river in 1854—and left them free to determine it.

[10] The fifteenth assignment is:

"The court erred in entering said judgment upon the motion of defendants and finding of the jury, as set forth in that portion of the judgment describing the land as in the Ysleta grant No. 2: (a) For the reason that same is not based upon the findings of the jury; (b) because the court is not warranted in making said recitals or findings of fact; (c) and because it is a physical impossibility that all of the land in the description set forth in the judgment is in fact situated within the boundary of Ysleta grant No. 2; (d) that said findings and judgment are not supported by the evidence, for the reasons stated in the motion for new trial heretofore adopted."

The proposition urged is that it appears that it was a physical impossibility for all of the lands described in the pleadings of plaintiffs to be within the Ysleta grant No. 2. This proposition is disposed of by the observations under the tenth and eleventh assignments. It was the duty of the court under the findings, to enter a final judgment.

[11] The nineteenth assignment is:

"The court erred in giving to the jury, upon request of defendants, special instruction No. 4, of defendants, whereby the court instructed the jury that, 'You are instructed that the land in controversy in this cause is the parcel lying between the line described in plaintiffs' third amended original petition, in connection with their trial amendment filed in this cause on May 28, 1915, and the north line of the land described and claimed by defendants in their third amended original answer in this cause,' for the reason that same is a repetition of the general charge of the court, as, to the land in controversy, and tends to place undue stress upon the fact as to what is the land in controversy, and thus lead the jury to believe, under contentions of the defendants made in this cause, and evidence introduced, that it is necessary that plaintiffs prove what is known as the 'red line' to be the north bank of the old river, and the exact location of same, in order to recover in said cause."

We fail to see how the court could, by any number of repetitions, lay undue stress upon the fact of what the land in controversy is, so as to in any way influence the jury in their findings as to a boundary line. It says nothing about a "red line," or any line, in fact. The instructions left the jury to find that the boundary line was where plaintiffs claimed it to be, or anywhere north of there; therefore left the jury to determine whether plaintiff should recover all, or a part, or none, of the lands sued for, and the charge in no way indicates what their findings should be. But suppose it did give undue prominence to the red line; that is the line to which plaintiffs claim and the defendants repudiate; for that reason it could in no way affect the plaintiffs' cause.

[12] By assignments 20, 21, 22, and 23, the appellants urge that the court erred in refusing to submit the special issues requested by appellants, upon the question of the 10-year statute of limitations. The only special issue requested by plaintiffs to support the assignments is as follows:

"You are further instructed that article 5675 of the Revised Statutes of Texas provides that: 'Any person who has the right of action for the recovery of any lands, tenements, or hereditaments against another having peaceable and adverse possession thereof, cultivating, using or enjoying the same, shall institute his suit therefor within ten years after his cause of action accrues and not thereafter.' You are also further instructed that the possession of a cotenant in law inures to the benefit of and is in law the possession of his cotenant or cotenants.

"You are further instructed in this connection that if you find from the preponderance of the evidence that C. S. Babbett, for himself and cotenants of the Ascarate grant, was in peaceable, continuous, and adverse possession of the land in controversy, claiming to the boundaries of the said grant, as shown by the patent introduced in evidence before you, cultivating, using, and enjoying the said land and claiming to own

the same for the period of 10 years before the 6th day of July, 1909, the date of filing suit, and that the land in controversy is situated in the boundaries of the Ascarate grant, as shown by the patent, then and in that event the plaintiff would be entitled to recover the said land, even though you may have found, under the issues submitted to you in the general charge, that the defendants had theretofore acquired title by limitations to the land in controversy, prior to 1898, and in this connection the court submits for your determination the following additional special issue:

. "Do you find from the preponderance of the evidence that the said C. S. Babbett was in possession of the land as hereinbefore instructed for a period of 10 years after the year 1897, and prior to the 6th day of July, 1908?"

This constitutes a general special charge, and calls for a general verdict. As such, it would have been improper to give it. H., T. C. Ry. v. Kincheloe, 56 Tex. Civ. App. 123, 119 S. W. 905. Moore v. Pierson, 100 Tex. 114, 94 S. W. 1132; Id., 93 S. W. 1007.

[13] But if the latter portion of the charge is a proper special issue in form, there is no positive evidence in this record that we can find, and counsel have cited none, that Babbitt was occupying the land for the joint owners of the Ascarate, and if he were not, any limitation that may have accrued to him would not inure to the benefit of such, unless he, by deed, conveyed his right so acquired to them. This has not been done, so far as this record discloses. The pleadings of the substituted plaintiffs recite that they have acquired all of Babbitt's interest in the Ascarate grant, but says nothing of any interest in the Ysleta grant, where the jury now find the land sought to be recovered by limitation is situated; so, if it was not in the Ascarate grant, Babbitt and the other plaintiffs were not joint tenants.

Assignments 21, 22, and 23, being to the same effect, are overruled for the same reasons.

[14] The twenty-fourth is that the court erred in inserting in the judgment—

"that it was the conclusion of the court, not only from the findings of the jury, but from all the evidence, that defendants were entitled to recover."

This assignment is followed by several propositions, but they all seem to be directed to the same point, viz., that article 1985, Rev. Civ. Stat. 1911, does not authorize the trial court to make findings of fact in addition to those made by the jury. This statute provides that:

"Upon appeal * * * an issue not submitted and not requested by a party to the cause, shall be deemed as found by the court in such manner as to support the judgment; provided, there be evidence to sustain such a finding."

So it is apparent that it was not necessary for the court to enter the words complained of in its judgment, for it (the judgment) to be a final disposition of the issues not submitted, unless same were requested; but in this connection, appellants urge that the issue of limitation of 10 years was requested to be submitted; therefore the court was not authorized to make this finding in its judgment. As held under the next preceding assignments, the trial court did not err in refusing the charge requested, because: First, it was not in proper form for submission of a special issue; and, second, the facts did not justify the submission of the issue.

[15] By one of the propositions under this assignment, it is suggested that other issues were not submitted, though requested. If so, the refusal of the court to submit these other issues should be presented to this court by proper assignments of error, complaining of such refusal, accompanied by proper bills of exception, showing timely and proper application to the court for the submission of such issues. Ins. Co. v. Shearman, 17 Tex. Civ. App. 456, 43 S. W. 930; Moore v. Pierson, 100 Tex. 113, 94 S. W. 1132.

[16, 17] The twenty-fifth:

"The trial court erred in overruling the amended motion for a new trial and in arrest of judgment presenting issues of fact as to misconduct of the jury, and other issues of fact, and by holding that it was not necessary in law for defendants by contest or answer to tender issues upon said motion."

It is news to us that allegations of fact in a motion for a new trial, supported by affidavit, must be answered and denied, or be taken as confessed, and require the court to grant the motion. Anyway, we have carefully read the motion for a new trial, and conclude that if all the matters alleged and supported by affidavits were admitted to be true, the trial court did not err in overruling the motion upon those grounds. And counsel have not referred us to any testimony taken by the court in relation to the facts alleged not supported by affidavit. Therefore, it will be presumed that the court did not err in overruling motion.

[18] The twenty-sixth is as follows:

"It appearing from the undisputed evidence that the trial judge became exceedingly ill before completing the hearing and passing upon the amended motions for a new trial, filed in said cause by plaintiffs, and that such illness constitutes in law an unavoidable accident or casualty, for which plaintiffs were not responsible and could not avoid in the exercise of the highest diligence; that by reason of such illness the trial judge or court was unable to consider intelligently and pass upon the motions of plaintiffs for a new trial and in arrest of judgment, by hearing a full presentation of same—the appellate court should therefore reverse and remand said cause for a new trial, as fully appears from plaintiffs' bills of exceptions, approved and filed in said cause."

The record shows that the motion was considered and overruled; that by the judge's bill of exceptions he admits he was taken ill, but there is no admission or proof that he was too ill to intelligently pass upon the motion. In the absence of both we will presume that the trial judge was, even though sick, still possessed of a fair degree of intelligence, and that he exercised it in this instance.

[19] The twenty-seventh, twenty-eighth, and twenty-ninth assignments charge error in

excluding the testimony of certain witnesses concerning the possession of the lands claimed by defendants, in fact, upon the issue as to whether the defendants had title to the lands claimed by them by virtue of the 10 years' occupancy. Since the jury have found that the lands claimed by defendants were not on the Ascarate grant, the question of the limitation title of defendants is immaterial.

The thirtieth assigns as error the fact that the court submitted charges upon the question of limitation in favor of defendants, and is overruled for the reason given next above.

[20, 21] The first and second assignments charge that the verdict and judgment are void because one juror was excused by the court, and the verdict was not signed by all of the remaining jurors. The court's bill of exceptions recites that during the trial of the case between the adjournment on Saturday and time to convene on Monday morning, he had been informed that the juror in question was sick and unable to further sit in the case; that he told the counsel for both sides what he had heard before resuming trial on Monday morning. Different remarks by counsel for both sides are recited as having been made in the presence of the court, but finally one counsel for each plaintiff and defendant said, "We'll leave it to the court." The court then remarked that, if left to him, he would excuse the juror, which was done, and the trial proceeded with 11 jurors for several days. The cause was submitted upon special issues. The verdict was returned into court signed only by the foreman. It was read aloud in open court. Appellants' counsel then and there stated that he would then make no statement with reference to the verdict. The court then asked the jury, "So say you all of you?" to which inquiry they assented, and thereupon the verdict of the jury was received and the 11 jurors discharged. The record further reveals that the first time any objection was made to the fact that all the jurors had not signed the verdict was upon written objection to appellees' motion to enter judgment for them upon the verdict rendered. This constitutes consent upon the part of appellants for the verdict to be returned signed as it was.

Article 5214, Revised Statutes of 1911, reads:

"The jury in the district courts shall be composed of twelve men; but the parties may by consent agree, in a particular case, to try with a less number."

Since the parties agreed to try the case with less than 12 jurymen, the 11 agreed upon constitutes a legal and complete jury. In such cases, all that is required is that the verdict be signed by the foreman. Lumber Co. v. Hancock, 70 Tex. 315, 7 S. W. 724; Gray v. Freeman, 37 Tex. Civ. App. 556, 84 S. W. 1110.

[22] But if we are in error in holding that the acts and statements of appellants in open court amount to an agreement to excuse the juryman, no exception was taken to the fact that only one had signed it, before they were discharged, when, if there had been, the court could have had them all sign it. The appellant is not now in a position to complain. Quanah Ry. Co. v. Jones Lbr. Co., 178 S. W. 861; Dunlap v. Raywood C. & M. Co., 43 Tex. Civ. App. 269, 95 S. W. 44.

[23] Besides, all the members of the jury declared the verdict to be the one agreed to by them, and in such case, the formality of signing is waived. Northern Pacific Ry. Co. v. Ulin, 158 U. S. 271, 15 Sup. Ct. 840, 39 L. Ed. 977.

[24, 25] The third and fourth are that the court erred in refusing to enter up an order which was prepared by appellants, following his act in excusing the juror, which recites that the juror was excused on account of illness—the proposition being that the order was approved by the court, placed in the hands of the clerk, and afterwards withdrawn by the court; that it had, by the act of approval and placing in the hands of the clerk, become a part of the record, and could not be set aside except upon motion filed for that purpose. The facts enumerated in the observations under the foregoing assignments copied from the bill of exceptions prepared by the court in relation to the same matter show that there was no judicial determination of the question of illness of the juror; that there was no evidence taken to determine whether the juror was sick or not, but, as stated above, the facts show that he was excused by consent of the counsel for the parties plaintiffs and defendants, without any investigation in open court. This being true, the court could not properly enter an order determining that the juror was sick, and if the order had been entered, the court having control over his orders during the term, could revoke same upon his own motion. Raley v. Sweeney, 24 Tex. Civ. App. 620, 60 S. W. 573.

[26] There is no contention upon the part of appellants that the facts stated in the order were true, but on the other hand, the statements of fact contained in the bill of exceptions—not controverted by appellants—above quoted, show that the court did not excuse the juror on account of illness judicially determined, but because of the agreement of the parties, expressed in open court in the presence of the court. It was therefore not error to direct the clerk not to enter the order. The record does not show that the fact recited in the proposed order, "The witness was excused on account of sickness," was true, and appellants do not cite us to any evidence.

[27] Fifth and sixth:

"The court erred in not granting motion for new trial on account of misconduct of the jury,"

The acts charged to be misconduct are that one of the jurors, after they had retired to consider their verdict, stated to the others that he had friends among the plaintiffs and friends among the defendants, and thereupon suggested and obtained an agreement from all the other 10 jurors that none of them should state how any of the jurors had voted, nor how they had obtained a verdict; should keep the proceeding secret, etc. There is no attempt to show that the jury arrived at a verdict in any way improper, and, as to keeping secret the vote taken, this must necessarily be disclosed when the verdict was rendered.

[28] The seventh is that the court should have granted a new trial because the jury, after retiring to consider their verdict, received material communications and evidence, the exact character of which is unknown to plaintiffs, "etc." If the plaintiffs do not know the exact character of the communications, how do they know that they were material, and how could we tell whether communications were made, and, if made, that they were material and likely influenced the verdict, unless we bring to bear upon the question our telepathic powers? The telepathic powers of the members of this court are wonderfully and fearfully developed, and no doubt we could, had we been informed that the jury were out, at the proper time, so that we could have had direct mental communication with them, have reached them and have made the discovery, but at this late date, it taxes our powers too greatly to undertake it, and we refuse.

[29] The eighth complains that in support of their motion for a new trial they offered to prove by the jurors that there had been a mistake of fact by the jurors in rendering their verdict. Verdicts of juries in civil cases cannot be impeached by affidavits or testimony of the jurors themselves. Railway Co. v. Ricketts, 96 Tex. 71, 70 S. W. 315. Especially must this rule apply to instances such as presented here. After the jurymen had been discharged from service, so counsel would have them testify, they discovered that a mistake of fact had been made—how was it discovered? From evidence or argument of counsel heard out of court? It must have been by reason of one or the other or both, for by propositions and argument it is revealed that the matter sought to be proven by them was that they did not intend to find the line to be upon top of the mesa. That was a disputed question of fact, evidenced both ways; and, as we view the record, there is ample evidence to support the finding of the jury, as made. If jurymen were permitted to impeach their verdicts in this way, few cases would be ended with one verdict of a jury.

Finding no error in the record, the assignments of error are overruled, and the cause affirmed.